IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CHERYL DIANNE DAVIS, | ) | |
| | ) | 4:10CV00039 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| HAIRPLUS-REGIS CORP., | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Before me is Defendant HairPlus-Regis Corporation's Motion for Summary Judgment and supporting brief. Def.'s Mot. for Summ. J., Mar. 11, 2011, ECF No. 14; Br. in Supp. of Mot. for Summ. J., Mar. 11, 2011, ECF No. 15. The Defendant also mailed a Roseboro notice to the pro se Plaintiff, Cheryl Davis, informing her that she may respond to its Summary Judgment Motion "by offering affidavits…or by filing sworn statements" and "fil[ing] a legal brief in opposition" within twenty days. Def.'s Mot. for Summ. J. 1-2. The Plaintiff did not file a response. Instead, she appeared at the April 7th, 2011 motion hearing with two witnesses whom she intended to put on the witness stand to testify, which the Court did not permit. For the reasons stated herein, the Defendant's Motion for Summary Judgment is **GRANTED**.

## FACTS

On September 9th, 2010, Plaintiff Cheryl Davis filed a Complaint alleging wrongful discharge, employment discrimination/disparate treatment, battery, and slander against Defendant HairPlus-Regis Corporation. Compl., Sept. 9, 2010, ECF No. 3. The Plaintiff avers that on June 14th, 2010 she was discharged from her job at the HairPlus at the Piedmont Mall in Danville. Id. 1, 3. A few days earlier, the Plaintiff, who is black, was involved in a physical altercation with a co-worker, Ashley Padgett, who is white. Id. The incident occurred on the job

1

and the Plaintiff avers that Ms. Padgett started the fight.  Id.  Apparently Ms. Padgett swore out an assault and battery warrant against the Plaintiff and the two appeared in the Danville City General District Court on August 4th, 2010 pursuant to that warrant.  Id.  The Plaintiff contends that the General District Court judge found that Ms. Padgett "was the attacker" and that the Plaintiff "had no choice [b]ut [to] defend [herself]."  Id.  After the fistfight, the Defendant company's area supervisor, Patrick Kellett, put the Plaintiff on leave for three days, until Monday, June 14th, 2010.  Dep. of Pl. 7, Mar. 11, 2011, ECF No. 15-1.  The Plaintiff had Mondays off, however, and so on June 14th Mr. Kellett called her to fire her for "aggressive behavior."  Compl. 3; Dep. of Pl. 7.  According to the Plaintiff, Mr. Kellett also informed her that Ms. Padgett "was relocated to another salon under the same company."  Compl. 3.  The Plaintiff indicates in her Complaint that Mr. Kellett never gave her an opportunity to explain or tell her side of the story.  Id. at 3-4.

On March 11, 2011, the Defendant company filed a Motion for Summary Judgment and a supporting brief.  The Defendant attached a number of exhibits to its brief in support, one of which is a deposition of the Plaintiff conducted on February 16th, 2011.  Dep. of Pl. 1.  In that deposition, the Plaintiff appears to contradict some of her assertions in her Complaint.  Specifically, the Plaintiff testified at her deposition that Mr. Kellet told her that both she and Ms. Padgett would be terminated.  Id. at 7.  The Plaintiff also told the defense attorney that she was able to tell Mr. Kellet her side of the story.  Id.  She further informed defense counsel that she believes that Mr. Kellet transferred Ms. Padgett to the Smart Styles salon in South Boston, which the Defendant owns.  Id. at 5.  The Plaintiff is under that impression because she saw Ms. Padgett at the South Boston Smart Styles salon "with a smock on, a work smock…and she was at

the cash register." Id. The Plaintiff admitted that "she [Ms. Padgett] was just at that spot at that time. She wasn't doing anything. She wasn't working on any customer at that time." Id.

An affidavit from Mr. Kellett also accompanies the Defendant's brief. Aff. of Mr. Kellett, Mar. 11, 2011, ECF No. 15-3. Mr. Kellett avers that, in addition to calling the Plaintiff to terminate her, he attempted to contact Ms. Padgett to terminate her. Id. at 1. After the altercation, Ms. Padgett apparently never returned to the HairPlus in Danville, rather she sent her grandmother to collect her belongings from the salon. Id. Mr. Kellett claims that Ms. Padgett never returned his calls and he was never able to get in contact with her. Id. As such, he recorded her termination as "a voluntary quit, no call, no show, which would preclude her [from] receiving unemployment compensation." Id. Mr. Kellett is strictly the area supervisor for HairPlus, not for the SmartStyle salons, which the Defendant also owns. Id. Mr. Kellett alludes to a policy the Defendant maintains whereby:

> while employed by a Regis owned salon or within 90 days after the end of their employment with a Regis salon, hairstylists for one Regis brand salon cannot become employed by another Regis brand salon without the approval of the area supervisor of the salon where they worked. For example, a stylist who works at the HairPlus in the Piedmont Mall under my supervision (or worked there in the prior 90 days) could not go to work for the SmartStyle in South Boston without my approval.

Id. The Plaintiff references the same policy. Dep. of Pl. 8-9. Mr. Kellett is adamant that Ms. Padgett never approached him seeking permission to work at the SmartStyle in South Boston and that he never offered to approve her to be hired by another salon owned by the Defendant. Aff. of Mr. Kellett 2. Mr. Kellett contends that no one in the SmartStyle division of the Defendant's salons ever contacted him to get his approval for Ms. Padgett to work in the South Boston SmartStyle. Id. The manager of the South Boston SmartStyle, Susan Edmondson, also

3

submitted an affidavit in which she claims that at no time in the past ten years has Ms. Padgett ever worked in that salon.[1]  Aff. of Ms. Edmondson 1, Mar. 11, 2011, ECF No. 15-4.  With her affidavit Ms. Edmondson included payroll records from the South Boston SmartStyle that show that Ms. Padgett was not employed at that salon from the time of her termination in Danville to mid-January 2011, which is presumably when defense counsel obtained the records.  Id. at 2-54.  Both Mr. Kellett and the Plaintiff agree that, subsequent to the altercation, the Plaintiff has neither asked for Mr. Kellett's permission to work at nor applied to any Defendant-owned salon.  Aff. of Mr. Kellett 2; Dep. of Pl. 3-5.

Based on the facts set out above, the Defendant argues that the Plaintiff cannot establish a prima facie case of race discrimination because she cannot meet the second and third prongs of the four-part test set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Br. in Supp. of Mot. for Summ. J. 6.  "Independently of Plaintiff's inability to meet the second and third elements of her prima facie case," the Defendant asserts that "Plaintiff's claim fails because she can produce no real evidence that, after their fight in Danville, Ms. Padgett ever worked for the South Boston SmartStyle."  Id. at 7.  For these three reasons, the Defendant contends that it is entitled to summary judgment in its favor.  Id. at 8.

The Plaintiff's deadline to file her Response to the Defendant's Motion was April 1st, 2011.  Mot. for Summ. J. and Roseboro Notice, Mar. 11, 2011, ECF No. 14.  Although she never submitted a Response, she did appear at the Clerk's Office window on March 30th asking for subpoenas for the April 7th hearing on the Defendant's Motion.  See Internal Clerk's Office Note, Mar. 30, 2011, ECF No. 18.  At the hearing, the Plaintiff attempted to respond to the Defendant's

---

[1] Ms. Edmondson notes, however, that Ms. Padgett applied for employment at the South Boston SmartStyles after her termination in Danville, but Ms. Edmondson avers that she "did not seriously consider her application given the reason she left the Danville HairPlus."  Aff. of Ms. Edmondson 1.

Motion by bringing live witnesses to Court to testify. The Court informed her that this would not be permitted. See McNeil v. U.S., 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (the Court must not weigh evidence or make credibility determinations at the summary judgment stage); Seamons v. Snow, 206 F.3d 1021, 1025-26 (10th Cir. 2000) (commenting that "oral testimony on summary judgment motions should be used sparingly and with great care" and characterizing oral testimony at a summary judgment hearing as "extraordinary"); Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390, 396 (4th Cir. 1994) ("[t]here is no absolute requirement that a ruling on a motion for summary judgment be preceded by a hearing"); Garza-Trevino v. New England Financial, 320 Fed.Appx. 203, 206 n.3 (5th Cir. 2009) (plaintiff could not present live testimony at a summary judgment hearing); MacLean v. Parkwood, Inc., 247 F.Supp. 188, 190 (D.N.H. 1965) (noting a preference for affidavits over live testimony at a summary judgment hearing), aff'd, 354 F.2d 770 (1st Cir. 1966); Forterra Systems, Inc. v. Avatar Factory, No. C-05-04472, 2006 WL 3707896, at *3 n.3 (N.D.Cal. Dec. 14, 2006) (commenting that "[t]he Court is not inclined to allow live testimony at any summary judgment hearing").

## APPLICABLE LAW

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). On a Motion for Summary Judgment, the facts are taken in the light most favorable to the non-moving party, but only insofar as there is a genuine dispute about those facts. Scott v. Harris, 550 U.S. 372, 380 (2007).

5

The movant has the initial burden of pointing out to the Court where the deficiency lies in the non-movants's case that would make it impossible for a reasonable fact-finder to bring in a verdict in the non-movants's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A movant-defendant may show that it is entitled to judgment as a matter of law by demonstrating that the non-movant plaintiff could not prove an essential element of her case. Id. at 322-23. It is then up to the non-movant to demonstrate to the Court that there are genuine issues of material fact and that she has made a sufficient showing on each of the essential elements of her case. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). When the movant provides affidavits and other materials with its Motion for Summary Judgment, the non-movant must respond with affidavits, deposition testimony, or as otherwise provided in Fed. R. Civ. P. 56(c). Celotex Corp., 477 U.S. at 324; Pension Ben. Guar. Corp. v. Beverley, 404 F.3d 243, 246 (4th Cir. 2005). Mere allegations, denials, references to the Complaint, or oral argument is insufficient to rebut a movant's Motion which is supported by affidavits. Fed. R. Civ. P. 56(e)(2); Berckeley Inv. Group, Ltd. V. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); Beverley, 404 F.3d at 246.

The Plaintiff's principal claim is that she is the victim of disparate treatment. Compl. 3-4. There are two ways the Plaintiff can overcome a motion for summary judgment on a disparate treatment claim. Martin v. Scott & Stringfellow, Inc., 643 F.Supp.2d 770, 782 (E.D.Va. 2009). One option is for the Plaintiff to present "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment action." Tabor v. Freightliner of Cleveland, No. 09-1625, 2010 WL 2836184, at *1 (4th Cir. July 20, 2010) (citing Hill v. Lockheed Martin Logistics, 354 F.3d 277, 284 (4th Cir. 2004)). In a case like this one where there is no direct evidence of

6

discrimination, the second option is for the Plaintiff to use the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green.

Under McDonnell Douglas Corp., the Plaintiff must first make a prima facie case of discrimination. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010). The Supreme Court has recognized that the wording of the four-part test is fact specific. McDonnell Douglas Corp., 411 U.S. at 802 n.13. The Plaintiff has offered two alternative versions of the facts. After the altercation at the Danville HairPlus, Ms. Padgett was either transferred to the South Boston SmartStyles without ever being fired or was terminated and then rehired at SmartStyles. Which variation of McDonnell Douglas Corp.'s basic test applies here depends on whether the Court is analyzing the first set of facts, which constitute one continuous event of disparate treatment, or the second set of facts, which shows two separate events. When analyzing the first set of facts, the test to be used would be the more general test from Martin v. Merck & Co., Inc, 446 F.Supp.2d 615 (W.D.Va. 2006). In Martin, the Court noted that ("[t]he four elements of a prima facie case of disparate treatment discrimination are: (1) the plaintiff is a member of a protected class, (2) the plaintiff is qualified for the position, (3) the plaintiff suffered adverse employment action, and (4) an employee not in the protected class replaced the plaintiff or was treated more favorably." Id. at 633.

When considering the second set of facts, two slightly different McDonnell Douglas Corp. variants would be appropriate. As to the termination, this Plaintiff would have to show that: (1) She is a member of a protected class; (2) She was discharged; (3) At the time of discharge, she was performing at a satisfactory level and meeting the employer's legitimate expectations; and (4) The employer treated similarly situated employees from outside the protected class more favorably. Rodriguez v. Kantor, No. 97-1668, 1998 WL 546098, at *8 (4th

7

Cir. Aug. 20, 1998) (citing EEOC v. Western Electric Co., Inc., 713 F.2d 1011, 1014 (4th Cir. 1983)). As to Ms. Padgett's alleged rehiring, the Plaintiff would have to show that: (1) She is a member of a protected class; (2) She applied and was qualified for the position; (3) Despite being qualified, she was rejected; and (4) After that rejection, the position remained open or was filled by a similarly situated applicant who is not a member of a protected class. Welborn v. Reynolds Metals Co., 810 F.2d 1026, 1028 (11th Cir. 1987); Monroe v. Burlington Industries, Inc., 784 F.2d 568, 571 (4th Cir. 1986). Once the plaintiff establishes a prima facie case of disparate treatment, the "burden of production then shifts to the employer to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." Merritt, 601 F.3d at 294 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). If the employer is able to do this, the plaintiff may then demonstrate that the "neutral" reasons offered by the employer are a pretext for discrimination. Merritt, 601 F.3d at 294.

## ANALYSIS

I. The Plaintiff Cannot Establish a Prima Facie Case of Discrimination Under the First Set of Facts

Under the Plaintiff's first set of facts, that Ms. Padgett was transferred instead of terminated after the fight, the appropriate test to apply would be the more general Martin test. There is no question that the Plaintiff meets Martin's first three prongs. She is a minority, she was fired, and there has been no dispute about her qualifications to work at HairPlus. Martin, 446 F.Supp.2d at 633. She would also meet Martin's fourth prong if Ms. Padgett was simply transferred, not terminated, because this would constitute more favorable treatment of a non-minority. Id. Aside from the unrebutted affidavits offered by Mr. Kellett and Ms. Edmondson, the problem with the Plaintiff's assertion that "I was fired and [Ms. Padgett] was relocated to

8

another salon" is that it "amount[s] to no more than [a] subjective belief." Compl. 3 (for Plaintiff's quote); Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 134-35 (4th Cir. 2002) (unsupported, subjective beliefs do not create a genuine issue of material fact); Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995) (unsupported speculation is insufficient to defeat a summary judgment motion). During the Plaintiff's deposition, defense counsel inquired twice about what supported the Plaintiff's belief that Mr. Kellett transferred Ms. Padgett to another salon. Dep. of Pl. 8-10. When first asked, the Plaintiff simply responded "I don't know." Id. at 8-9. Later in the deposition, defense counsel asked her "[w]hat evidence do you have that [Mr. Kellett] went to [Ms. Padgett] and said, '[Ms. Padgett], I want to relocate you to another store?'" to which the Plaintiff responded "I don't have any evidence of that." Dep. of Pl. 10. While it is true that the Court must take the facts in the light most favorable to the non-movant Plaintiff, the Court does not have to accept her unsupported speculation in the face of the Defendant's properly supported Motion for Summary Judgment. George & Co. LLC, 575 F.3d at 392 (Court must take the facts in the light most favorable to the non-movant); Bryant, 288 F.3d at 134-35 (Court is under no obligation to accept unsupported speculation); Ennis, 53 F.3d at 62 (same). The Plaintiff's lawsuit seems to be based, in large part, on the fact that she saw Ms. Padgett at the SmartStyles salon in the South Boston Wal-Mart. Dep. of Pl. 5. The most detailed description of this event comes from the Plaintiff's deposition, in which she told defense counsel:

> I saw [Ms. Padgett] with a smock on, a work smock that she usually wore when she was at HairPlus, and she was at the cash register and actually she was just at that spot at that time. She wasn't doing anything. She wasn't working on any customer at that time.

Id. Even taking that evidence in the light most favorable to the Plaintiff and generously reading into it, it at best demonstrates that Ms. Padgett was working at the South Boston SmartStyles. It does not demonstrate how Ms. Padgett got to that salon—whether by transfer or by rehiring. Discounting speculation, then, the Plaintiff would be unable to meet Martin's fourth prong even in the absence of Mr. Kellett and Ms. Edmondson's affidavits. Consequently, she has not made a prima facie case under McDonnell Douglas Corp., entitling the Defendant to summary judgment on disparate treatment. Bryant, 288 F.3d at 135 (affirming the District Court's grant of summary judgment for the employer in a Title VII case where the employee failed to make a prima facie case of discrimination under McDonnell Douglas Corp.).

II. The Plaintiff Cannot Make a Prima Facie Case Under the Second Set of Facts

In the alternative, the Plaintiff contends that Ms. Padgett was initially terminated from the Danville HairPlus, but subsequently *rehired* at (as opposed to transferred to) the South Boston SmartStyles. Two slightly different variants of the McDonnell Douglas Corp. test apply to these two separate events. Even taking the facts on record in the light most favorable to the Plaintiff, however, she has not made a prima facie case of disparate treatment in either her termination or Ms. Padgett's alleged rehiring.

With regard to her termination, the Plaintiff, by her own sworn admission, cannot meet the fourth prong of the test announced by the Fourth Circuit in Rodriguez v. Kantor, namely that the employer treated similarly situated employees from outside the protected class more favorably. Rodriguez v. Kantor, 1998 WL 546098, at *8. In the Complaint, the Plaintiff appears to allege that Mr. Kellett told her that she was terminated and that he would be moving Ms. Padgett "to another salon under the same company." Compl. 3. Along with its Motion for Summary Judgment, the Defendant provided excerpts from the Plaintiff's deposition in which

the Plaintiff told defense counsel that she explicitly asked Mr. Kellett whether he would also be firing Ms. Padgett, to which the Plaintiff avers Mr. Kellett said, "yes." Dep. of Pl. 7. To date, the Plaintiff has not responded to the Defendant's motion, which she is obligated to do if she seeks to rebut the sworn statements the Defendant has offered.[2] Fed. R. Civ. P. 56(e)(2). Even if the Plaintiff were to submit an affidavit swearing that what she told defense counsel at her deposition was false or inaccurate, it would be a futile endeavor. See Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999) ("we have consistently held that a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit"). Simply put, the Plaintiff cannot prevail on her disparate treatment claim as to her initial termination because she does not dispute that Ms. Padgett was also let go after the altercation, and thus was treated no differently than the Plaintiff.[3] Compl. 7.

As to Ms. Padgett's alleged rehiring, the Plaintiff cannot prevail because, once again, she is unable to make a prima facie case of disparate treatment. The Plaintiff cannot meet the second prong of the Monroe v. Burlington Industries, Inc. incarnation of McDonnell Douglas Corp.— that she applied for the position. Monroe, 784 F.2d at 571. In her deposition testimony, the Plaintiff admitted that she has never applied for a position with any Defendant owned salon since her termination at HairPlus. Dep. of Pl. 3-5. The Plaintiff has never asserted otherwise. In his unrebutted affidavit, Mr. Kellett confirms that the Plaintiff has never asked for his permission to

---

[2] The response deadline under the Roseboro notice sent to the Plaintiff was Friday, April 1st, 2011. Mot. for Summ. J. and Roseboro Notice.

[3] In his affidavit, Mr. Kellett also avers that he attempted to contact Ms. Padgett several times in order to terminate her, but that his calls went unanswered and Ms. Padgett never showed up at HairPlus again, anyway. Aff. of Mr. Kellett 1. If anything, it appears Ms. Padgett got worse treatment than the Plaintiff, as Mr. Kellett notes that Ms. Padgett's termination was recorded as "a voluntary quit, no call, no show," which precludes her from receiving unemployment benefits. Id. Since the Plaintiff has not responded to the Motion for Summary Judgment, Mr. Kellett's affidavit has gone unrebutted. Fed. R. Civ. P. 56(e)(2).

work at any of the Defendant's salons "and, to [his] knowledge, she has never applied for a position at another [Defendant] owned salon." Aff. of Mr. Kellett 2. The Plaintiff's failure to express even an informal interest in employment with the Defendant's salons is fatal to her case. See Johnson v. Wheeling-Pittsburgh Steel Corp., 279 Fed.Appx. 200, 207 (4th Cir. 2008) (plaintiff could not establish a prima facie case of discriminatory failure to promote where he did not bid or attempt to bid on the job); Kolpakchi v. Principi, 113 Fed.Appx. 633, 637 (5th Cir. 2004) (plaintiff could not make a prima facie case of employment discrimination where she failed to make an adequate effort to seek the position by applying). While it is true that an "applicant" does not necessarily need to apply formally for employment in order to meet the second prong of Monroe, the Plaintiff in this case expressed no interest in a position with a Defendant owned salon after she was terminated from HairPlus. Dep. Of Pl. 3-5; Aff. of Mr. Kellett 2; Holsey v. Armour & Co., 743 F.2d 199, 208-09 (4th Cir. 1984) (the fact that a minority promotion hopeful made only a "casual inquiry" would not keep him from meeting McDonnell Douglas Corp.'s second prong because the company from which he sought the promotion had never promoted a minority to the position he sought). Unlike the Holsey case, there is no indication in the case at bar that the Defendant company would not hire minorities. See also Int'l Brotherhood of Teamsters v. U.S., 431 U.S. 324, 365-66 (1977) (non-applicant plaintiffs may still be entitled to relief under Title VII where the employer enforces discriminatory policies in hiring). Not only was the Plaintiff at one time hired by the Defendant, the Plaintiff and Mr. Kellett both indicated that the Defendant company made special accommodations for a minority employee in the past by allowing her to transfer from a Southside Virginia HairPlus to a Defendant owned salon in the District of Columbia. Dep. of Pl. 9; Aff. of Mr. Kellett 2. The fact that the Plaintiff expressed no interest in being rehired by one of the Defendant's salons

keeps her from establishing a prima facie case of disparate treatment in hiring, and makes summary judgment for the Defendant appropriate. Bryant, 288 F.3d at 135. The incident where the Plaintiff saw Ms. Padgett at the South Boston SmartStyles is irrelevant here because it does not cure the Plaintiff's failure to express interest in being rehired.

III. Even if the Plaintiff Had Established a Prima Facie Case, the Defendant Had a Neutral Reason for Discharging the Plaintiff

Assuming for the sake of argument that the Plaintiff had made a prima facie case of discrimination, which she has not, the Defendant had an acceptable, race-neutral reason for terminating the Plaintiff. In Title VII cases, Courts have consistently held that physical altercations constitute sufficient grounds for termination. See, e.g., Ford v. General Elec. Lighting, LLC, 121 Fed.Appx. 1, 4 (4th Cir. 2005) (no race discrimination occurred where the employer discharged both the minority and non-minority employee involved in a workplace fistfight, even though the minority employee alleged that he was simply defending himself); Aguirre v. New York State Police, 156 F.Supp.2d 305, 321 (S.D.N.Y. 2001) (the defendant offered a legitimate, race-neutral explanation for terminating the plaintiff where, among other misconduct, the plaintiff, a state trooper, was involved in a brawl with local police officers at a bar); Jackson v. Frank, 859 F.Supp. 1250, 1255 (E.D.Mo. 1994) (Postal Service advanced legitimate, race-neutral reason for termination where the plaintiff violated Postal Service rules prohibiting altercations between employees). Even if the Plaintiff did act out of self-defense in engaging Ms. Padgett in the altercation, the Defendant was still entitled to discharge both women for fighting on the job, which it did. Ford, 121 Fed.Appx. at 4.[4] It should further be noted that

---

[4] In the Ford case, the defendant employer discharged both a white and a black employee for violating a company policy against workplace violence. Ford, 121 Fed.Appx. at 4. Regardless of whether the Defendant in the case at

there is no evidence that the Defendant was *aware* who started the fight at the time of the termination. The Plaintiff simply avers that Ms. Padgett *in fact* prompted the altercation. Compl. 3.

IV. The Plaintiff Fails to State a Claim for Wrongful Discharge

In its Answer, the Defendant asserts failure to state a claim among its affirmative defenses. Answer 3, Oct. 1, 2010, ECF No. 5. Indeed, the Plaintiff has failed to state a claim for wrongful discharge.[5] It is well-settled that Virginia follows the at-will employment doctrine. Progress Printing Co., Inc. v. Nichols, 421 S.E.2d 428, 429 (Va. 1992); Conrad v. Ellison-Harvey Co., 91 S.E. 763, 766 (Va. 1917). Under the at-will doctrine, an employer may terminate an employee at any time for any reason or no reason without being liable for wrongful discharge. Sea-Land Service, Inc. v. O'Neal, 297 S.E.2d 647, 650 (Va. 1982). The Courts of this Commonwealth presume employment for an unspecified term to be terminable at will. Id. This is a rebuttable presumption. Id. In order to rebut the presumption successfully, though, the employee must produce evidence of employment for a definite term, which the Plaintiff has not done. Id.; Spiller v. James River Corp., No. LW-2216-3, 1993 WL 946387, at *3 (Va. Cir. Ct. Dec. 23, 1993). The Plaintiff has failed to supply sufficient facts to show her entitlement to relief, and has therefore failed to state a claim for wrongful discharge, thereby entitling the Defendant to summary judgment on this claim. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Howard ex rel. Estate of Howard v. Bayes, 457 F.3d 568, 577 (6th Cir. 2006) (a District Court may grant summary judgment on a state law claim where the plaintiff fails to establish the

---

bar had a formal policy prohibiting its employees from coming to fisticuffs in its salons, terminating employees for this reason is entirely reasonable.

[5] Unlike the Title VII claim, wrongful discharge, battery, and slander are state law causes of action. The Plaintiff is a Virginian and the Defendant is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Although the pro se Plaintiff did not allege $75,000 in damages from the state law claims, this Court addresses them out of an abundance of caution.

14

claim); Enowmbaitang v. Seagate Technology, Inc., 148 F.3d 970, 973 (8th Cir. 1998) ("[a] district court may properly grant summary judgment sua sponte and without prior notice if the losing party has failed to state a claim upon which relief may be granted") (internal quotation marks and citing references omitted).

V. The Plaintiff Fails to State a Claim for Battery

It is unclear whether the Plaintiff is asserting a battery claim. See Civil Cover Sheet, Sept. 9, 2010, ECF No. 3-1 (checking box for "Assault, Libel & Slander"). If she is, though, it would be a claim against Ms. Padgett on these facts, not the named Defendant. An attempt to hold the Defendant liable through respondeat superior would fail here. Assuming that the required employer-employee relationship existed between Ms. Padgett and HairPlus, Ms. Padgett was not acting within the scope of her employment when she attacked the Plaintiff. Kensington Associates v. West, 362 S.E.2d 900, 901 (Va. 1987) ("an employer is liable for the torious act of his employee if the employee was performing his employer's business and acting within the scope of his employment"). In most cases where the employee's intentionally tortious act "arose wholly from an independent, external, and personal motive," Virginia Courts will refuse to find that an employee was acting within the scope of her employment when she committed an intentional tort. Kensington Associates, 362 S.E.2d at 903-04 (employer was not liable where employee security guard accidently shot a construction worker because the shooting did not further the employer's interests and served only a personal motive); Abernathy v. Romaczyk, 117 S.E.2d 88, 92-93 (Va. 1960) (employee delivery man was not acting within the scope of his employment when he got into a fistfight with another driver who caused a traffic accident). The employee's motive, however, is not entirely determinative of whether the tort was committed within the scope of employment. Gina Chin & Associates, Inc. v. First Union Bank, 537 S.E.2d

573, 578 (Va. 2000). "Rather, the issue is whether the service itself, in which the tortious act was done, was within the ordinary course of such business." Id. (internal quotation marks and citing references omitted). Fistfights are clearly not within the ordinary course of operating a hair salon, hence the disciplinary action taken against both the Plaintiff and Ms. Padgett. See Blair v. Defender Services, Inc., 386 F.3d 623, 627-28 (4th Cir. 2004) (District Court properly granted summary judgment to the defendant janitor services company because their janitor's violent attack of a student on the Virginia Tech campus "had nothing to do with his performance of janitorial services"). Summary judgment for the Defendant on this claim is appropriate. Bayes, 457 F.3d at 577; Seagate Technology, Inc., 148 F.3d at 973.

## VI. The Plaintiff Fails to State a Claim for Slander

The Complaint makes one reference to the Plaintiff's name being slandered. Compl. 5. Presumably, the Plaintiff's theory is that she was slandered because she was accused of "aggressive behavior." Id. at 3. Under Virginia law, the Plaintiff must show that the Defendant *published* a false factual statement that concerned and harmed the Plaintiff's reputation. Hyland v. Raytheon Technical Services Co., 670 S.E.2d 746, 750 (Va. 2009). In her deposition, the Plaintiff told defense counsel that Mr. Kellett accused her of "aggressive behavior" when he called her the Monday after the altercation to terminate her. Dep. of Pl. 7. Since the allegedly slanderous comment was made over the phone, there are no facts, direct or circumstantial, suggesting that there was ever publication, an essential element of slander. Food Lion, Inc. v. Melton, 458 S.E.2d 580, 584-85 (Va. 1995). The Plaintiff has not alleged, for example, that others were likely around Mr. Kellett when he made the phone call and overheard, or that Mr. Kellett put the Plaintiff on speaker phone for others to hear. Without pleading facts showing at least circumstantial evidence of publication, the Plaintiff cannot even establish a prima facie case

16

of slander.  Id.  The Defendant is therefore entitled to summary judgment on the slander claim. Bayes, 457 F.3d at 577; Seagate Technology, Inc., 148 F.3d at 973.

## **CONCLUSION**

The Plaintiff has failed to establish a prima facie case of disparate treatment under either set of facts she has alleged.  She further fails to state a claim for wrongful discharge, battery, and slander.  Therefore, the Defendant's Motion for Summary Judgment is **GRANTED** and the Clerk of the Court is directed to **DISMISS** this case from the docket.

ENTERED this 14th day of April, 2011.

s/Jackson L. Kiser  
Senior United States District Judge